UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 05-2293(DSD/JJG)

Employer Trustees of the Graphic
Communications International
Union, Local 1-B Health &
Welfare Fund,

   Plaintiffs,

v.                  **ORDER**

Union Trustees of the Graphic
Communications International
Union, Local 1-B Health &
Welfare Fund,

   Defendants.

  Thomas P. Kane, Esq., Scott R. Carlson, Esq., and Hinshaw
  & Culbertson, 222 South Ninth Street, Suite 3100,
  Minneapolis, MN 55402, counsel for plaintiffs.

  Scott A. Higbee, Esq., 2223 Central Avenue N.E.,
  Minneapolis, MN 55418, counsel for defendants.

  This matter is before the court upon plaintiffs' motion for summary judgment. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court denies plaintiffs' motion, without prejudice.

**BACKGROUND**

  Plaintiffs, the Employer Trustees of the Graphic Communications International Union, Local 1B Health and Welfare Fund ("Employer Trustees"), filed this declaratory judgment action

to require the defendants, the Union Trustees of the Graphic and Communications International Union, Local 1B Health and Welfare Fund ("Union Trustees"), to comply with a 1991 arbitration award. The Employer Trustees and Union Trustees jointly administer the Graphic Communications International Union, Local 1-B Health & Welfare Fund ("Fund") as a Joint Board of Trustees ("Board"). The Fund sponsors the Graphic Communications International Union, Local 1-B Health and Welfare Plan[1] ("Plan") and is governed by the terms and conditions set forth in the Restated Agreement and Declaration of Trust for the Graphic Communications Local 1B Health and Welfare Fund A, with Amendments ("Declaration of Trust"). (See Carlson Aff. Ex. 1.)

In the late 1980s the Fund began to experience financial problems. In response to those problems, on January 27, 1990, the Board unanimously passed a resolution that would require, among other things, all retirees to begin paying the actual cost of their healthcare benefits as of January 1, 1991. However, the Employer Trustees and Union Trustees deadlocked on the issue of how to calculate the actual cost of retirement benefits. Pursuant to the Declaration of Trust, the Joint Board submitted the matter to arbitration. (See Radziej Aff. Ex. 1.)

---

[1] The Plan is both a "multiemployer plan" and an "employee welfare benefit plan," as those terms are defined in the Employee Retirement Income Security Act of 1974 ("ERISA"). See 29 U.S.C. §§ 1002(1),(37)(A).

On December 19, 1991, an arbitrator found that the Board was bound by its resolution that "all retirees will be required to pay the actual cost of the health care benefits." (Id. Ex. 2 at 13.) The arbitrator, however, concluded that all Plan members who retired prior to March 1, 1993, would pay a subsidized rate of coverage.[2] (Id. at 16-17.) Consistent with the joint resolution, the arbitrator required that all Plan members who retired subsequent to March 1, 1993, would be required to pay the full cost of coverage. (Id.) The arbitrator then proceeded to resolve the deadlock over the specific amount of contributions that retirees would be required to pay. (Id. at 14.) To determine the amount, however, the arbitrator merely adopted, in large part, a proposal that the Employer Trustees had set forth during a May 17, 1991, board meeting. (Id. at 16.) The arbitrator referenced the proposal without any specificity and, as a result, the award does not specify a manner of calculation of coverage costs.

The parties never sought clarification of how to calculate the cost of coverage for post-March 1993 retirees. On September 15,

---

[2] Specifically, the arbitrator determined that members retiring prior to March 1, 1993 would receive a subsidized rate of $50 for under age 65 and $25 for over age 65, adjusted annually for medical inflation.

1994, the Board unanimously agreed to charge Plan members the cost of coverage based on COBRA rates.[3] (Fisk Aff. ¶ 4.) Consistent with COBRA, the Board determined that the Fund's actuary would calculate the actual cost of coverage by dividing the cost of all participants' coverage, active and retired, by the total number of participants. (Id.) Since November of 1994, the Fund's actuary has annually calculated the costs of coverage using this method. (Id. ¶ 6.)

On November 19, 2001, the Board held a meeting and unanimously adopted the 2002 retiree rates that the Fund's actuary had calculated based upon the arbitration award for pre-March 1993 retirees and used COBRA rates for post-March 1993 retirees. (See Radziej Aff. Ex. 5.) At that meeting, the actuary informed the Board that for the 2002 fiscal year the Fund would be required to comply with the American Institute of Certified Public Accountants Statement of Position 92-6 ("SOP 92-6"). SOP 92-6 is an accounting measure which requires, among other things, that multiemployer welfare plans calculate the actual cost of future post-retirement benefits of financial plans. The Board retained actuary Duane Hanf to prepare the SOP 92-6. On March 24, 2003, actuary Hanf attended a board meeting and informed the Board that preparation of the SOP 92-6 disclosed that the Fund was increasingly subsidizing

---

[3] The Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. §§ 1161-69.

4

retirement benefits for post-March 1993 retirees.  (Id. Ex. 7.) Prior to preparation of the SOP 92-6, the Fund's actuary had never separately determined the actual cost of coverage for active and retired participants.  However, with the advent of SOP 92-6, retiree costs are required to be broken out and, as a result, the Board now knows the true costs of retiree coverage.  (Id.)

On November 22, 2004, the Employer Trustees distributed a comprehensive analysis of the issues presented by the ever-growing retiree subsidy.  (Id. Ex. 8.)  On February 4, 2005, the Board discussed what the 1991 arbitration award required in light of the fact that the actual cost of retiree coverage had been determined. (Id. Ex. 9.)  In that discussion, the Board agreed that the rate for pre-March 1993 retirees cannot exceed what is provided for in the arbitration award.  (Id.)  However, the Board further acknowledged that the award is not determinative on the issue of how to calculate rates for post-March 1993 retirees because at the time the award was rendered the cost of coverage was not required to be calculated by breaking out retired and active members.  (Id.)

On May 26, 2005, the Employer Trustees presented a proposal which, in their opinion, would implement the arbitration award's requirement that post-March 1993 retirees pay the full cost of coverage.  (Id. Ex. 10.)  However, following a caucus of the Union Trustees, the Board tabled the proposal.  In a letter dated June 10, 2005, the Union Trustees informed the Employer Trustees that

5

the proposal "constituted harsh and drastic measures and that the Union Trustees were unanimous in rejecting the ... proposal and advancing that proposal to the arbitration process." (Id. Ex. 11.) Despite the Union Trustees' position, on June 24, 2005, the Board convened and the Employer Trustees moved to pass the proposal. (Id.) The Union Trustees voted against the proposal and the Board deadlocked.

The Board did not proceed to arbitration to resolve the deadlock. Rather, on September 2, 2005, the Employer Trustees filed this lawsuit in Minnesota state court seeking a declaratory judgment to enforce the 1991 arbitration award's requirement that post-March 1993 retirees be charged the full cost of coverage. On September 30, 2005, pursuant to 28 U.S.C. §§ 1331 and 1441, the Union Trustees removed the case to this court. On October 6, 2005, the Employer Trustees moved for summary judgment.

## DISCUSSION

The Employer Trustees request this court to order the Union Trustees to comply with the terms of the 1991 arbitration award. However, neither party disputes the enforceability of the award. Furthermore, the parties do not dispute that the award requires that all post-March 1993 retirees pay the actual cost of their

6

retirement benefits. The principal dispute in this case, and the cause of the Board's deadlock, is the manner in which the costs of coverage are to be calculated in light of the advent of SOP 92-6.

**I.   Removal Jurisdiction**

As a threshold matter, the court must determine whether it has jurisdiction to enter the declaratory judgment the Employer Trustees seek. See Bueford v. Resolution Trust Corp., 991 F.2d 481, 485 (8th Cir. 1993) (court may *sua sponte* address jurisdiction at any time). A defendant may remove any case, pursuant to 28 U.S.C. § 1441, that invokes this court's original jurisdiction to hear all cases that arise under the Constitution or laws of the United States. 28 U.S.C. § 1331. Under the "well-pleaded complaint" rule, a complaint that does not contain a federal cause of action cannot be removed to federal court in anticipation of a federal defense. Metropolitan Life Ins. Co. v. Gen. Motors Corp., 481 U.S. 58, 63 (1987); Lyons v. Philip Morris Inc., 225 F.3d 909, 912 (8th Cir. 2000). However, if Congress completely preempts an area of state law, the well-pleaded complaint rule does not apply and "'any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim.'" Lyons, 225 F.3d at 912 (quoting Caterpillar, Inc. v. Williams, 482 U.S. 386, 393 (1987)).

The Employer Trustees' complaint does not contain a federal claim. The Union Trustees removed this case to federal court based

on the Labor-Management Relations Act ("LMRA"), 29 U.S.C. §§ 141-187, and the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16. Following removal, the Employer Trustees argue that, to the extent this action is preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461, this court has jurisdiction to order injunctive relief for the Union Trustees' breach of their fiduciary duties under ERISA. The court will address each of the purported bases for jurisdiction in turn.

### A. Federal Arbitration Act

The Union Trustees cite to § 9 of the Federal Arbitration Act as a source of federal jurisdiction. See 9 U.S.C. § 9. However, "[i]t is well established that the FAA is not an independent grant of federal jurisdiction." Smith v. Rush Retail Centers, Inc., 360 F.3d 504, 505 (5th Cir. 2004); see also Iowa Mgmt. & Consultants, Inc. v. Sac & Fox Tribe, 207 F.3d 488, 489 (8th Cir. 2000). Therefore, absent an independent basis for federal jurisdiction over the parties' underlying dispute, the court is without jurisdiction to review, interpret, modify or enforce the 1991 arbitration award. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n. 32 (1983).

### B. Labor-Management Relations Act

The Union Trustees cite to § 185(a) and § 186(c)(5)(B) of the LMRA to support federal question jurisdiction. Section 185(a) confers on federal courts exclusive jurisdiction over any lawsuit

8

involving a "violation of contracts between an employer and a labor organization representing employees ... or between any such labor organizations." 29 U.S.C. § 185(a). Section 185(a) completely preempts any state law cause of action that involves an analysis of a collective bargaining agreement. Carter v. Ford Motor Co., 121 F.3d 1146, 1149 (8th Cir. 1997).

Section 186(c)(5)(B) confers jurisdiction on the court only to appoint an impartial umpire, upon petition, in the event the trustees deadlock on an issue of trust fund administration and are unable to agree upon which umpire should resolve the dispute. See 29 U.S.C. § 186(c)(5)(B). Section 186(c)(5)(B) does not authorize the court to reach the merits of the deadlocked issue or involve itself with issues of trust fund administration. See Local 144 Nursing Home Pension Fund v. Demisay, 508 U.S. 581, 590-91 (1993) (§ 186 does not allow a federal court to issue injunctions against a trust fund or its trustees to require that funds be administered in a particular manner). The compulsory, statutory mechanism of arbitration is triggered once the trustees deadlock on an important aspect of trust administration. Hawkins v. Bennett, 704 F.2d 1157, 1160 (9th Cir. 1983); see also Geigle v. Flacke, 768 F.2d 259, 262-63 (8th Cir. 1985) (benefit levels are matter of trust fund administration and subject to compulsory arbitration).

As to the Union Trustees' reliance on § 185, this case does not involve either the collective bargaining process or a labor

dispute. Disputes that arise among trustees jointly administering a trust fund as fiduciaries are wholly distinct from labor disputes that arise in the context of collective bargaining agreements. See NLRB v. Amax Coal Co., 453 U.S. 322, 336-38 (1981) (atmosphere in which trust fund fiduciaries operate, as mandated by § 186(c)(5) and ERISA, is "wholly inconsistent" with collective bargaining process). As a result of this distinction, Congress expressly rejects compulsory arbitration as a method to resolve collective-bargaining disputes, 29 U.S.C. § 158(d), while explicitly providing for "compulsory resolution of any deadlocks among welfare fund trustees by a neutral umpire." Id. at 337. Therefore, the court finds that § 185(a) does not confer jurisdiction on the court to enforce the arbitration award.

As to the Union Trustees' reliance on § 186(c)(5)(B), the court finds that the Board has deadlocked on an issue of trust fund administration. In removing this case, the Union Trustees state that at its core, "this case is an action by the Employer Trustees seeking changes in the operation of the [Fund] ... to dramatically increase the Health and Welfare premiums applicable to certain retirees." (Notice of Removal, ¶ 9.) As stated above, § 186(c)(5)(B) does not confer on the court jurisdiction to break the Board's deadlock or order compliance with the arbitration award as the Employer Trustees proposed at the June 24, 2005, board

10

meeting. However, § 186(c)(5)(B) does confer jurisdiction on the court for the sole purpose of appointing an impartial umpire to resolve the deadlock upon petition of either party.

**C.   Employee Retirement Income Security Act**

The Employer Trustees argue that, to the extent this action is preempted by ERISA, the Union Trustees are in breach of their fiduciary duties under 29 U.S.C. § 1104. If a state law cause of action is within the scope of, or relates to, ERISA's civil enforcement provision, 29 U.S.C. § 1132(a), the action may be removed to federal court based on complete preemption. Lyons v. Philip Morris, Inc., 225 F.3d 909, 912 (8th Cir. 2000). The Employer Trustees rely on Iron Workers Local No. 272 v. Bowen to argue that under ERISA this court has jurisdiction to order injunctive relief as a result of the Union Trustees' breach of their fiduciary duties. See 695 F.2d 531, 535 (5th Cir. 1983) (once arbitrator resolves deadlocked issue, management trustees' refusal to comply with award is an automatic breach of fiduciary duty under ERISA). In Bowen, the union trustees specifically claimed breach of fiduciary duty and sought removal of the management trustees as well as compensatory and punitive damages. See Iron Workers Local No. 272 v. Bowen, 624 F.2d 1255, 1258-59 (5th Cir. 1980). By contrast, in this case the Employer Trustees have not filed a claim for breach of fiduciary duty and do not seek any direct relief for breach of a fiduciary duty. The court finds

that there is no ERISA claim presently before the court. Therefore, ERISA does not preempt the Employer Trustees' cause of action and does not confer jurisdiction on the court to enforce the arbitration award.[4]

For all of the above reasons, the court denies the Employer Trustees' motion for summary judgment, without prejudice, because it does not have jurisdiction to order enforcement of the arbitration award in the manner that the Employer Trustees request. Pursuant to 28 U.S.C. § 1447(c), upon a conclusion that a court lacks subject matter jurisdiction over a case that has been removed, the court shall remand the case back to state court to resolve the parties' dispute. In re Atlas Van Lines, Inc., 209 F.3d 1064, 1066 (8th Cir. 2000). However, the court finds that

---

[4] Furthermore, even if the Employer Trustees pleaded a claim of breach of fiduciary duty, they do not have standing to sue as fiduciaries under ERISA because the Employer Trustees do not have discretionary control over administration of the Plan, as required by 29 U.S.C. § 1002(21)(A). See Kilkenny v. Guy C. Long, Inc., 288 F.3d 116 (3d Cir. 2002) (dismissing ERISA lawsuit filed by union trustees for lack of standing where board had deadlocked on issues of trust administration and union trustees did not first submit dispute to arbitration); Alfarone v. Bernie Wolff Constr. Corp., 788 F.2d 76 (2nd Cir. 1986) (same). The preemptive force of ERISA does not reach so broadly as to abrogate the equal representation and arbitration mandates of the LMRA. Kilkenny, F.3d at 124; Alfarone, 788 F.2d at 79. To permit the Employer Trustees to file this lawsuit "without first submitting the issue to arbitration would violate the firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases." See Alfarone, 788 F.2d at 79.

because it has jurisdiction to appoint an impartial umpire to resolve the deadlock, upon petition, a remand at this stage would be premature.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that:

1.  Plaintiffs' motion for summary judgment [Docket No. 3] is denied without prejudice.

2.  The Employer Trustees and Union Trustees shall agree on an impartial umpire to decide the dispute upon which they have deadlocked, pursuant to 29 U.S.C. § 186(c)(5)(B).  If the parties agree on an impartial umpire, they shall inform the court of the impartial umpire agreed upon and the court will, *sua sponte*, dismiss this case without prejudice.

3.  In the event the parties fail to agree on an impartial umpire by May 1, 2006, this court retains jurisdiction to appoint an impartial umpire, upon petition by either party.  Upon such petition, and after appointing an impartial umpire to resolve the deadlock, the court will dismiss this case, in its entirety, without prejudice.

4.   If the parties do not agree on an impartial umpire by May 1, 2006, and do not petition the court to appoint an impartial umpire, the court will remand this matter to state court, pursuant to 28 U.S.C. § 1447(c), for lack of jurisdiction.

Dated:  April 14, 2006

                                            <u>s/David S. Doty</u>
                                            David S. Doty, Judge
                                            United States District Court